# EXHIBIT 12

| | |
|---|---|
| ENCORE HOLDINGS, LLC<br>Plaintiff,<br>vs.<br>LARRY ARNETT, FIRST CHOICE<br>LABORATORY, LLC, DANIEL HURT<br>AND RUSSELL KITCHEN  Defendant, | IN THE CIRCUIT COURT OF THE 11TH<br>JUDICIAL CIRCUIT IN AND FOR MIAMI-<br>DADE COUNTY, FLORIDA<br><br>CASE NO.: 2016-23340-CA-01-13 |

_____/

## NOTICE OF FILING AMENDED COMPLAINT

Plaintiff, ENCORE HOLDINGS, LLC, by and through its undersigned counsel, hereby files this Notice of Filing Amended Complaint, and in support thereof states as follows:

1. Plaintiff hereby files Amended Complaint
2. Plaintiff inadvertently filed an Amended Complaint with a scrivener's error moments prior, only correction is "Pennsylvania" from "Delaware."

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via E-Mail on November 4, 2016 to Darryl R. Richards, Esq., ,at darrryl@jpfirm.com gwenb@jpfirm.com.

**SHAMIS & GENTILE, P.A.**

14 NE 1st Ave., Suite 400
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: efilings@sflinjuryattorneys.com

By:  /S/Andrew J. Shamis
ANDREW J. SHAMIS, ESQ
Florida Bar # 101754

| | |
|---|---|
| ENCORE HOLDINGS, LLC<br>　　　　Plaintiff, | IN THE COUNTY COURT IN AND FOR<br>MIAMI-DADE CIRCUIT COURT,<br>FLORIDA |
| vs. | |
| FIRST CHOICE LABORATORY, LLC<br>LARRY ARNETT, , DANIEL HURT AND<br>RUSSELL KITCHEN<br>　　　　Defendants,<br>_____/ | CASE NO.: 2016-23340-CA-01-13 |

## AMENDED COMPLAINT

The Plaintiff, ENCORE HOLDINGS, LLC. ("Encore"), by and through its undersigned counsel, files this complaint against the defendant, FIRST CHOICE LABORTORY, LLC ("First Choice"), LARRY ARNETT ("Arnett"), DANIEL HURT ("Hurt"), and RUSSELL KITCHEN ("Kitchen"), alleging as follows:

### GENERAL ALLEGATIONS

1.  This is an action for damages in excess of $15,000.00, exclusive of interest and costs.

2.  First Choice is a Florida limited liability company, organized and existing under the laws of Florida, with its principal place of business at 6061 NE 14th Avenue, Fort Lauderdale, FL 33334, and is authorized to transact business within Miami-Dade County, Florida.

3.  Encore Holdings, LLC is a Pennsylvania limited liability company, with its principal place of business located at 23 South 23rd Street, Unit 5A Philadelphia PA 19103, but doing business in Florida.

4.  First Choice is engaged in the business of laboratory services.

5.  Defendant Larry Arnett is an individual over the age of 18 who resides in Broward County, Florida, and is otherwise sui juris.

6.  Defendant Russell Kitchen is an individual over the age of 18 who resides in Broward County, Florida, and is otherwise sui juris.

7. Defendant Daniel Hurt is an individual over the age of 18 who resides in Broward County, Florida and is otherwise sui juris.

8. The venue is proper in Miami-Dade County, Florida because the breach of contract herein alleged occurred in Miami-Dade County, Florida.

9. The relevant contract that was breached stipulates Miami-Dade County as an appropriate forum.

10. On or about December 11, 2014 Encore and First Choice entered into a contract, a copy of which is attached hereto as Exhibit "A."

11. Kitchen is an owner of the laboratory in question.

12. Arnett is an owner of the laboratory in question, as well as the registered agent.

13. Hurt is an owner and/or receives profit from the laboratory in question.

14. Any alleged condition precedent to any of the claims asserted in the counts below or to the filing of this lawsuit has occurred, has been performed by Encore, has been excused by Defendants, or has been waived by Defendants.

15. Encore provides informational marketing and promotion of clinical laboratory services of the type offered by First Choice nation through skilled representatives.

16. First Choice recruited Encore and made regular payments to the Encore.

17. First Choice was to pay Encore for the skilled consultant's services at a certain rate.

18. First Choice did not pay Encore for the services provided by Encore.

19. The claims for relief stated below are in the alternative.

### COUNT 1: BREACH OF WRITTEN CONTRACT (AGAINST FIRST CHOICE)

Encore reincorporates and re-alleges paragraphs (1) through (19) as if fully set forth herein.

20. This count is a claim by Encore against First Choice for breach of a written contract (the "Contract") between Encore and First Choice.

21. On or about December 11, 2014, Encore and First Choice entered into the Contract, a copy of which is attached as Exhibit 1.

22. In return for Encore's marketing and promotion of clinical laboratory services, First Choice agreed in the Contract to pay $75 for each hour of consulting services provided by Encore to First Choice. This was evident through the terms of the contract and through a regular course of dealing.

23. Even though Encore, provided services to First Choice, First Choice materially breached the obligation of First Choice under the Contract to pay Encore for these services.

24. Encore has been damaged in an amount not less than $989,655.24 by reason of First Choice's material breach of the Contract.

WHEREFORE, the Plaintiff, ENCORE, INC., demands judgment against the Defendant, FIRST CHOICE, INC., for damages in an amount not less than $989,655.24, together with pre-judgment interest, and such other and further relief as this Court deems just and appropriate.

### COUNT 2: UNJUST ENRICHMENT (AGAINST ALL DEFENDANTS)

25. Encore reincorporates and re-alleges paragraphs (1) through (9) and (11) through (19) as if fully set forth herein.

26. This count is a claim by Encore against defendants for unjust enrichment.

27. This count, as an alternative to count one, assumes that there is no contract between the parties.

28. Encore conferred a valuable benefit on which Defendants profited, *viz.*, consulting services with a value of $989,655.24.

29. At all times material hereto, Defendants knew full well that a valuable benefit was being conferred upon it by Encore.

30. Defendants voluntarily accepted and retained the benefit conferred on it by Encore by, among other things, collecting money for the work performed by Encore and then retaining these monies without paying anything to Encore.

31. The circumstances are such that it would be inequitable if Defendants were permitted to continue to retain the money conferred upon Defendants without paying for the services provided by Encore.

32. Defendants have been unjustly enriched at the expense of Encore, and Encore is entitled to relief as a result, which relief should equal the greater of $75.00 for each hour of service provided by Encore or the amount received by Defendants for the services of Encore.

WHEREFORE, the plaintiff, ENCORE, INC., demands judgment against the defendants, FIRST CHOICE, ARNETT, HURT and KITCHEN for an equitable award, together with pre-judgment interest, and such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues in all Counts triable by Jury.

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Suite 400
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915
Email: efilings@sflinjuryattorneys.com

By:   /S/Andrew J. Shamis
ANDREW J. SHAMIS, ESQ
Florida Bar # 101754

*Attorneys for Plaintiff ENCORE HOLDINGS, LLC*

*EXHIBIT "A"*

## SALES AND MARKETING SERVICES AGREEMENT

THIS SALES AND MARKETING SERVICES AGREEMENT (the "**Agreement**") is made and entered as of this 11th day of December, 2014 (the "**Effective Date**"), by and between ENCORE HOLDINGS (hereinafter referred to as "**Contractor**"), and FIRST CHOICE LABORATORY, LLC, a Florida limited liability company (hereinafter referred to as the "**Company**").

**RECITALS**

WHEREAS, the Company owns and operates a toxicology laboratory located at 6061 NE 14th Avenue, Ft Lauderdale, Florida (the "**Lab**"), specializing in drug and DNA testing; and

WHEREAS, Contractor has experience in the marketing and promotion of clinical laboratory services of the type offered by Company; and

WHEREAS, the Company desires to engage Contractor, as an independent contractor, to market and promote the Company's Lab and Lab services, and Contractor desires to accept such engagement, subject to and in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual promises and the benefits accruing to the parties hereto, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Engagement.** Subject to the other terms and conditions specified herein, during the term of this Agreement, the Company hereby agrees to engage Contractor, and Contractor hereby agrees to accept such engagement, to market and promote the Company's Lab and related Lab services.

2. **Term of Agreement.** The term of this Agreement commenced on the above referenced date and shall thereafter continue in full force and effect for a period of one year (the "**Initial Term**"); provided, that, this Agreement shall automatically renew for successive terms of one-year each (each, a "**Renewal Term**") following the expiration of the Initial Term or a Renewal Term, as applicable, unless sooner terminated as hereinafter provided. (The Initial Term and each Renewal Term, if and as applicable, are sometimes referred to herein, collectively, as the "**Term**".)

3. **Description of Services of Contractor.**

    (a) During the Term hereof, unless otherwise mutual agreed by the parties, Contractor agrees to devote not less than 80 hours per month to furnishing, for and on behalf of the Company, the marketing and promotional services for the Company's Lab and Lab services (the "**Services**") described on Schedule 3 attached hereto to the persons, physicians or offices within the geographic area otherwise described on said schedule (the "Service Area").

    (b) Contractor shall perform the Services in conformity with all applicable federal, state and local laws, rules and regulations (including all applicable state and federal patient confidentiality laws, rules or regulations with respect to drug testing or other laboratory services performed at the Company's Lab), and applicable marketing and promotional policies and procedures of the Company. Contractor acknowledges and agrees that if the Company is a "covered entity" under the provisions of 45 C.F.R. §164, Part E (the "**HIPAA privacy regulations**"), by reason of its performance or billing of any drug tests (or other laboratory services) at the Lab at any time during the Term hereof, then , upon request of the Company, Contractor shall enter into a Business Associate Agreement with the Company, in form and content reasonably acceptable to the Company, consistent with the applicable requirements of the HIPAA privacy regulations.

(c) From time to time, upon request, Contractor will provide the Company with updates of Contractor's planned and/or anticipated marketing and promotional activities for or on behalf of the Company's Lab and Lab services, and provide the Company with such information related thereto as the Company may reasonably request.

(d) In performing the Services hereunder, Contractor agrees that Contractor shall: (i) only use verbal or written marketing materials or information concerning the Company's Lab and Lab services prepared by or otherwise approved in writing by the Company, (ii) comply with all applicable policies and procedures established or approved by the Company, from time to time, with regard to the marketing and promotion of its Lab and Lab services, and (iii) provide to third parties only accurate, complete and truthful information concerning the Company, its Lab and its Lab services.

(e) Contractor may not subcontract or otherwise delegate Contractor's obligations under this Agreement without the prior written consent of the Company, which consent may be given or withheld by the Company in its sole and absolute discretion.

4. **Compensation/Reimbursement.**

(a) In exchange for Contractor's provision of the Services, the Company agrees to compensate Contractor at the rate of $ 75 per hour, for each hour expended during each calendar month during the Term hereof in the performance of the Services (excluding travel time, which shall be compensated on a per diem basis as specified on Schedule 4 attached hereto), which shall be payable within 30 days of the Company's receipt of Contractor's monthly timely records. Contractor acknowledges and agrees that Contractor shall be obligated to submit monthly time reports to the Company within 10 days of the end of each calendar month during the Term in form and content specified by the Company, describing the Services performed by Contractor during each calendar month (or portion hereof) during the Term hereof and the respective time devoted by Contractor to the performance of such Services during each such month. Contractor shall be responsible for payment of all applicable taxes (including social security and Medicare taxes) on such compensation.

(b) Except as otherwise expressly provided herein to the contrary, Contractor shall furnish, at Contractor's own expense, any and all materials, equipment, services or supplies (including use of an automobile) necessary or useful to successfully perform the Services. The Company agrees to reimburse Contractor for authorized expenses approved or specified in writing by the Company from time to time (subject to such limitations as the Company may specify), directly and reasonably incurred by Contractor in performing the Services, subject to Contractor providing the Company with a reasonable accounting, together with receipts or otherwise suitable documentation, of or for such expenses. Such reimbursement to be paid within 30 days of the Company's receipt of Contractor's time records for the calendar month to which such expenses relate and Contractor's written request for reimbursement (which shall not be submitted more frequently than monthly), together with copies of applicable substantiating receipts or other suitable documentation for such expenses.

(c) The parties acknowledge and agree that the hourly compensation due and payable to Contractor hereunder for the Services, as specified above, has been established based on the parties' good faith estimate of the fair market value of the Services to be provided by Contractor hereunder, and has not be determined based on, nor shall payment of such compensation be conditioned upon, past or future referrals or other business arranged or generated or anticipated to be arranged or generated for the Lab by Contractor. Prior to the commencement of each Renewal Term hereunder, if and as applicable, the parties agree to review the fixed hourly compensation then payable to Contractor

2

hereunder to confirm (or otherwise determine if) such compensation remains consistent with the fair market rate of the Services.

(ii) In the event the Company determines in good faith, prior to the commencement (or otherwise during the period) of any Renewal Term hereunder, that the hourly compensation then payable hereunder to Contractor exceeds or will exceed the fair market value of the Services performed (or to be performed) by Contractor during such Renewal Term, as determined without regard to the volume or value of Lab services generated or arranged or anticipated to be generated or arranged by Contractor, the Company shall give written notice of such determination to Contractor. In such event, this Agreement shall automatically terminate as of the expiration of its then term (if such written notice is given not less than 30 days before the expiration of said term) or 30 days from the Company's delivery of such written notice to Contractor (if such written notice is given at a later time) unless the parties enter into a written amendment to this Agreement prior to the commencement of such Renewal Term (or, otherwise, within prior to the expiration of said 30-day period) to adjust the compensation payable to Contractor during such Renewal Term to reflect the then fair market value of the Services, as so determined by the Company.

5. **Use of Automobile.**

(a) As a condition of Contractor's engagement hereunder, at all times during the Term hereof, Contractor shall provide Contractor's own automobile for use in connection with Contractor's performance of the Services hereunder. Contractor agrees to obtain, and at all times during the Term hereof, maintain automobile liability insurance in such amounts and insuring against such risks as is specified by the Company. Said automobile insurance shall be obtained from an insurance carrier licensed in the state of Contractor reasonably acceptable to the Company. Except to the extent subject to reimbursement in accordance with written Company policies applicable to its independent contractor marketing personnel, Contractor agrees all expenses relating to Contractor's ownership or lease and business use of Contractor's automobile shall be the sole responsibility of Contractor.

(b) Upon written request, Contractor agrees to furnish the Company with a certificate (or certificates) demonstrating the maintenance by Contractor of the automobile insurance coverage specified in Section 5(a) above. Contractor's failure to maintain such automobile insurance coverage (or failure to maintain an automobile for Contractor's use in performing the Services) shall be grounds for the Company's immediate termination of this Agreement, exercisable by delivery of written notice to Contractor.

(c) To the extent not covered by insurance, Contractor agrees to indemnify and hold the Company harmless from and against any and all claims, suits, actions, and other proceedings, whether civil, criminal, administrative, investigative, or otherwise, together with all judgments, damages, fines, costs, expenses, and other amounts (including without limitation, reasonable attorneys' fees) attributable to or arising out of the negligence or willful misconduct by Contractor in the use of Contractor's automobile in the performance of the Services. The provisions of this Section 5(c) shall survive the expiration of the Term or other termination of this Agreement.

6. **Termination of Agreement.**

3

(a) This Agreement may be terminated by either party at any time following the Initial Term, without cause, by delivery of not less than (ninety) 90 days prior written notice to the other party.

(b) In addition to the other rights of termination granted the Company under other provisions of this Agreement, the Company may terminate this Agreement at any time "for cause" upon delivery of written notice to Contractor if:

(i) subject to Section 18 below, Contractor fails to perform or, in the reasonable determination of the Company, fails to adequately perform the Services required hereunder in accordance with all of the applicable terms and conditions set forth herein unless Contractor cures such failure to perform or adequately perform, to the reasonable satisfaction of the Company, within fifteen (15) days of receipt of written notice of such failure from the Company (provided the Company may immediately terminate this Agreement upon delivery of written notice if any such failure to perform or adequately perform the Services hereunder by Contractor was the subject of a prior written notice given by the Company to Contractor in accordance with this Section 6(b)(i));

(ii) the Services performed by Contractor during any calendar quarter (or portion thereof) during the Term hereof fail to meet or satisfy minimum performance standards, if and as applicable, specified by the Company in writing prior to the commencement of such fiscal period (or mutually agreed to in writing by the parties at any time during such fiscal period);

(iii) Contractor engages in conduct in material violation of established medical or legal ethics, including any breach of the obligations of Contractor under HIPAA in connection with Contractor's status as a "business associate" of the Company (if the Company is otherwise a "covered entity" under the HIPAA privacy rules);

(iv) Contractor misuses substances (e.g. illicit drugs or prescribed medication), as determined by the Company in its reasonable discretion or performs the Services under this Agreement while impaired by any chemical substance (whether illicit or prescribed), unless it is a prescribed medication disclosed to and approved by the Company in advance;

(v) Contractor engages in any criminal activity or any activity, whether or not criminal, which in the reasonable judgment of the Company adversely and materially reflects upon the Company and/or the Lab or Contractor's ability to properly and adequately perform the Services for and on behalf of the Company in accordance with the terms hereof;

(vi) Contractor fails to comply with any of the Company's policies and procedures applicable to Contractor's performance of the Services; and/or

(vii) Contractor is otherwise in material breach of any of the provisions of this Agreement (not described above) applicable to Contractor, including any covenants or agreements of Contractor specified hereunder, and fails to cure said breach within fifteen (15) days of receipt of written notice thereof, provided, the Company immediately terminate this Agreement upon delivery of written notice if Contractor is in breach of any covenants of Contractor set forth in Sections 9 and/or 10 below.

(c) Contractor may terminate this Agreement at any time "for cause" upon delivery of written notice to the Company if the Company is in breach of any material provision hereof and fails to cure such breach to the reasonable satisfaction of Contractor within fifteen (15) days of the Company's receipt of written notice thereof (provided, notice and opportunity to cure a breach need not be given for

4

any material breach by the Company which was the subject of a prior notice given by Contractor pursuant to this Section 7(c)).

(d) Upon the expiration of the Term or other termination of this Agreement, neither party shall have any further obligations hereunder except for: (i) obligations occurring or accruing on or prior to the effective date this Agreement terminates, including the obligation of the Company under Section 4 above to pay or reimburse Contractor for any compensation or reimbursable expenses accrued or incurred on or before such date to the extent not then paid, and (ii) obligations, promises, covenants or terms contained herein that are expressly made to extend beyond the term of this Agreement. In the event that this Agreement is terminated as result of breach of any provision hereof by either party, the non-breaching party shall be entitled to damages and other relief available at law and in equity, in addition to any other amounts provided for hereunder.

7. **Indemnification**.

(a) In addition to the indemnification specified in Section 5(c) above, Contractor agrees to indemnify, defend and hold the Company harmless from and against any injury, loss, damage, or liability (or any claims in respect to the foregoing), including court costs and expenses (including reasonable attorneys' fees) arising from or related to Contractor's breach of this Agreement or Contractor's conduct in carrying out the Services, including Contractor's payment or agreement to pay, in cash or in-kind, any remuneration to any person for or in consideration of or for the referral of any business to the Lab the payment of which was not otherwise authorized in writing by the Company's Manager(s) or Managing Member(s) (as such term is used or defined under the Florida limited liability company act).

(b) The Company agrees to indemnify, defend and hold Contractor harmless from and against any injury, loss, damage, or liability (or any claims in respect to the foregoing), including court costs and expenses (including reasonable attorneys' fees) arising from or related to Contractor's use of Company approved marketing or promotional materials or the Company's provision of drug testing or other laboratory services at the Lab furnished by the Company as a direct result of Contractor's performance of the Services. Notwithstanding the foregoing, the Company's obligations of indemnification under this Section 7(b) shall not apply to any injury, loss, damage, liability or claim if and to the extent that the application thereof would nullify insurance coverage otherwise maintained by or for the Company for such injury, loss, damage, liability or claim.

(c) Each party shall reasonably cooperate with the other party in all litigation matters affecting the other party and with respect to which indemnification may be payable by one party to the other under the foregoing provisions of this Section 7, consistent with advice from each party's legal counsel.

(d) The provisions of this Section 7 shall survive the expiration of the Term or other termination of this Agreement.

8. **Relationship of Parties**. Contractor is performing the Services hereunder as an "independent contractor" and not as an employee, agent, partner of or joint-venturer with the Company. Contractor will be solely responsible for the payment or withholding of all federal, state or local income taxes, social security and Medicare taxes, unemployment taxes, worker's compensation and other insurance required by law arising from Contractor's compensation hereunder. Notwithstanding any provision of this Agreement to the contrary, Contractor shall not have the power and authority to act for or on behalf of the Company or to dictate the administration, management, or operations of the Company.

5

CONTRACTOR AGREES THAT NEITHER THIS AGREEMENT NOR THE SERVICES PERFORMED BY CONTRACTOR HEREUNDER SHALL ENTITLE CONTRACTOR TO PARTICIPATE IN OR ACCRUE OR RECEIVE BENEFITS UNDER ANY PENSION PLAN, DEFERRED CONTRIBUTION PLAN, HEALTH PLAN, LIFE INSURANCE PLAN, DISABILITY PLAN, OR ANY OTHER EMPLOYEE BENEFIT PLAN (AS DEFINED BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974), OR ANY ARRANGEMENT, PROGRAM, OR POLICY MAINTAINED BY THE COMPANY THAT PROVIDES EMPLOYEE BENEFITS. IN ADDITION, IN THE EVENT CONTRACTOR IS RECLASSIFIED BY ANY COURT OR AGENCY OF COMPETENT JURISDICTION TO BE AN "EMPLOYEE" OF THE COMPANY, CONTRACTOR HEREBY EXPRESSLY WAIVES ALL RIGHTS TO PARTICIPATE IN ANY SUCH PLANS AND ARRANGEMENTS DURING THE TERM HEREOF.

9. **Confidential Information.**

(a) Contractor acknowledges and recognizes that, in connection with the performance of the Services hereunder, Contractor has had, will have or may have access to certain confidential information of the Company and/or its customers or patients, including, but not limited to, the identity of the Company's referral sources, patients and customers and prospective referral sources, patients or customers, PHI (as defined for purposes of the HIPAA privacy regulations) of persons for whom the Company's Lab performs drug testing or other laboratory services, the Company's marketing plans, pricing, other financial information, trade secrets and other proprietary information of the Company not generally known to the public (hereinafter referred to as the "**Confidential Information**"). Contractor agrees that during Contractor's engagement with the Company hereunder and following the termination of Contractor's engagement hereunder, whether the termination shall be voluntary or involuntary, or with or without cause, or whether the termination is solely due to the expiration of the Term of this Agreement, Contractor will not, directly or indirectly, disclose, disseminate, publish or permit the disclosure, dissemination or publication of any Confidential Information, to or for any other person, group, firm, practice, association or other entity, or utilize the same for any reason or purpose whatsoever, other than to provide the Services hereunder for the Company or, otherwise, as requested or approved by the Company. Upon termination of this Agreement, or at any earlier time upon the request of the Company, Contractor shall promptly deliver to the Company all Confidential Information (regardless of the medium stored), including all copies thereof, in the possession or under the control of Contractor.

(b) For purposes of this Agreement, "**Confidential Information**" shall not include any information which: (i) was available to third persons on a non-confidential basis prior to disclosure thereof to Contractor by or on behalf of the Company, (ii) is or was received by Contractor from a third party other than in breach of a confidentiality agreement said third party has or had with the Company, or (iii) is or becomes publicly known other than by reason of a breach of Section 9(a) above by or on behalf of Contractor.

(c) The provisions of this Section 9 shall survive the expiration of the Term or other termination of this Agreement.

10. **Covenants.** In consideration of the engagement of Contractor hereunder and payment of the compensation due Contractor under Section 4 hereof, Contractor agrees that during the Term hereof and for a period of two years following the expiration of the Term or other termination of this Agreement for any reason whatsoever (the "**Restricted Period**"), Contractor will not, directly or indirectly:

(a) provide Contractor's marketing and/or promotional services for or on behalf of any other toxicology (or clinical) laboratory offering drug and DNA testing and/or other laboratory tests or services performed or offered by the Lab and which is either located within, or which otherwise solicits any such laboratory business, directly or indirectly (whether through employees, independent contractors or otherwise) within, the Service Area (or any portion thereof), regardless of the capacity in which Contractor performs or provides such services or otherwise own or hold, directly or indirectly (whether through immediate family members, trusts or otherwise), whether as an owner, shareholder, member, partner, independent contractor or otherwise, any interest in any such other toxicology (or clinical) laboratory or any other clinical laboratory which competes within or outside the Service Area with the Company's Lab (provided, the foregoing shall not prohibit Contractor from having a non-controlling interest in any publicly traded securities issued by a publicly-held corporation);

(b) employ, contract or engage (or solicit to employ, contract or engage), in any capacity, whether for Contractor's own benefit or for the benefit of any other business or person (including any other legal entity), any employee of the Company or any other individual contracted or engaged by the Company to provide any services to or for the Company, or any other individual who was employed or engaged by the Company to furnish services to or on its behalf at any time during the preceding 12-month period (or, following expiration of the Term or other termination of this Agreement, at any time during the final 18 months during the Term hereof); and

(c) contact to sell or offer or otherwise solicit any drug testing or other laboratory services provided or offered (or of the kind provided or offered) by the Company at the Lab, whether for the benefit of Contractor or for or on behalf of any other business or person (including legal entity), any patients, referral sources or customers of the Company (including any persons receiving or ordering drug testing or other laboratory services from the Company at any time during the prior 12-months or, following expiration of the Term or other termination of this Agreement, at any time during the last 18 months during the Term hereof) or any prospective patients, referral sources or customers of the Company whom Contractor (or any employee or other independent contractor of or for the Company) contacted, on behalf of the Company, to sell or offer to sell or otherwise solicit any such drug testing or other laboratory services during the prior 12-month period (or, following expiration of the Term or other termination of this Agreement, at any time during the final 18-months during the Term hereof) or otherwise seek to cause any such patient, referral source or customer (or prospective patient, referral source or customer) to terminate their relationship with the Company (or otherwise not obtain such services from the Company).

The parties hereby agree that the foregoing restrictive covenants are reasonable in their limitation and necessary for the protection of legitimate business interests of the Company, including, but not limited to, for the protection of the Company's patients and customers and the "goodwill" of the Company developed through its on-going business operations, and that the restraints imposed by the foregoing described restrictive covenants are not unduly burdensome on Contractor. The parties further agree that, if any of the foregoing described restrictive covenants, in whole or in part, are found to be unenforceable by a court of competent jurisdiction by reason of their length of time, scope, or size of geographic area, it is the intention of the parties that such restrictive covenant be reformed by such court so that such period of time, scope, or geographic area be reduced to the least extent required to cure such invalidity. The foregoing provisions of this Section 10 may be enforced by any successor to the business of the Company (whether by asset sale, merger or otherwise), and shall survive the expiration of the Term or other termination of this Agreement.

11. **Remedies for Breach**. The parties acknowledge and agree that the restrictive covenants of Contractor specified in Sections 9 and 10 above shall be construed as agreements of Contractor

7

independent of any other provision of this Agreement and that, as a result, the existence of any claim or cause of action that Contractor may have against the Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to enforcement of such restrictive covenants by the Company. The parties further understand and agree that damages which the Company will or may suffer from a violation by Contractor of any of Contractor's covenants contained in Section 9 or Section 10 hereof would be difficult, if not impossible, to determine, and for that reason, in addition to all other rights granted the Company at law, the Company shall be entitled to obtain injunctive relief to enforce the covenants (or any of the covenants) of Contractor contained in Sections 9 and/or 10 hereof. The provisions of this Section 11 shall survive the expiration of the Term or other termination of this Agreement.

12. **Severability.** If any provision of this Agreement shall be declared invalid or unenforceable by a court of competent jurisdiction, the invalidity or unenforceability of such provision shall not affect the other provisions hereof, and this Agreement shall be construed and enforced in all respects as if such invalid or unenforceable provision was omitted.

13. **Prevailing Party Attorneys' Fees and Costs.** In the event a dispute arises between the parties hereto relating to this Agreement (or any terms hereof) and suit is instituted, or if any party otherwise institutes any legal (or equitable) action to enforce any of the terms of this Agreement or to declare rights hereunder, then, in addition to all other sums recoverable, the prevailing party in any such action shall be entitled to recover from the non-prevailing party, the court costs and other reasonable costs and expenses incurred by the prevailing party in connection therewith, including reasonable attorney fees, whether incurred before or at the trial level or in any appellate or other proceeding.

14. **Governing Law/Venue.** This Agreement shall be governed by and construed in accordance with the laws of the state of Florida. Venue for any legal proceeding or action arising out of or construing this Agreement shall lie exclusively in the appropriate state courts located in Miami-Dade, Broward County and/or Palm Beach Counties, Florida, or the United States District Court for the Southern District of Florida, and the parties hereto hereby waive any other jurisdiction or venue.

15. **Completeness of Agreement/Amendments.** All understandings and agreements heretofore made between the parties hereto with respect to the subject matter of this Agreement are merged into this document which alone fully and completely expresses their agreement and understanding with regard to the subject matter hereof. No change or modification may be made to this Agreement except by a written instrument duly executed by both parties hereto.

16. **Notices.** Any and all notices or other communications provided for herein shall be given in writing and shall be hand-delivered or sent by United States mail, postage prepaid, registered or certified, return receipt requested, or next business day delivery by a nationally recognized over-night courier service (such as Fed-X), and addressed to the parties as follows:

If to the Company:

    First Choice Laboratory LLC
    6061 NE 14th Avenue
    Ft Lauderdale, FL 33334

8

7847194_3 / PERSON.475

Attention: Manager

If to Contractor:

ENCORE HOLDINGS, LLC
475 Brickell Ave., #3115
Miami, FL 33131

Provided, that, either of the parties may, from time to time, give to the other party notice in the manner specified in this Section 16 of some other address to which notices or other communications to such party shall be sent, in which event notices or other communications to such party shall be sent to such other address. Any notice or other communication given hereunder shall be deemed to have been received as of (i) the date the same is actually personally delivered, or (ii) three business days after deposit in the United States mail or the next business day after consignment with a nationally recognized overnight courier service, in either case, if sent in the manner specified above, except that any notices of a change of address shall be deemed received only upon actual delivery.

17. **Change in Law or Interpretation.**

(a) Notwithstanding any other provisions of this Agreement, if the governmental agency or agencies which administer or enforce the Medicare program or state of Florida Medicaid program or any other federal or state regulatory body or agency passes, issues, interprets or promulgates any law, rule, regulation, standard, guideline or interpretation during the Term of this Agreement which prohibits, restricts, limits or in any way materially adversely affects the rights or obligations hereunder of the Company or Contractor, then the affected party may give the other party written notice (an "Amendment Notice") of such party's intent or desire to amend this Agreement, to the reasonable satisfaction of the noticing party, to compensate or adjust for such prohibition, restriction, limitation, or materially adverse effect.

(b) If an Amendment Notice is given by one party hereto to the other in accordance with Section 17(a) above, and the parties are otherwise unable to mutually agree on a written amendment to this Agreement as contemplated by Section 17(a) above, within 30 days after the non-noticing party received such Amendment Notice, then the noticing party may immediately terminate this Agreement at any time after the expiration of said 30-day period by delivery of written notice to the other party. Notwithstanding the preceding sentence, if the implementation of any law, rule, regulation, standard, guideline or interpretation which gave rise to the delivery of an Amendment Notice is vacated or repealed or its enforcement is stayed on account of any administrative appeal or any suit filed in a court of competent jurisdiction, then the right to amend or terminate this Agreement as set forth in this Section 17 by reason of the issuance, enactment or promulgation thereof shall also be vacated or terminated or, as applicable, stayed (during the period of such administrative or court ordered stay).

18. **Force Majeure.** Neither party shall be liable or be deemed in default for any delay or failure in performance under this Agreement (and the Company shall not be deemed in default by reason of the interruption of the operation of the Lab) to the extent resulting, directly or indirectly, from acts of civil or military authority, acts of public enemy, wars, accidents, fires, explosions, earthquakes, floods, failure of transportation, strikes or other work interruptions or any other acts of God or similar cause beyond the reasonable control of said party. It is the purpose and intent of this provision that in the event of the occurrence of any such delay, the time or times for performance of the obligations of the affected party (and, to the extent impacted by such non-performance, of the other party) hereunder shall be

9

extended for the period of any such delay; provided, that, if any such condition or event and inability to perform continues for more than 10 consecutive days, then the other party shall have the right to terminate this Agreement upon 15 days prior written notice to the non-performing party, unless the non-performing party resumes full performance under this Agreement before the expiration of said 15-day period.

19. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the respective parties hereto and their heirs, legal representatives, successors and assigns; provided, that, nothing contained in this Section 19 shall be interpreted as permitting any assignment of Contractor's obligations hereunder not otherwise approved in writing by the Company.

20. **Counterparts.** This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

21. **Captions.** The captions appearing in this Agreement are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any provisions of this Agreement or in any way affect this Agreement.

22. **Waivers.** No failure by either party hereto to insist upon the strict performance of any covenant, agreement, term or condition of this Agreement by the other party shall constitute a waiver by such party of any such breach. Either party may waive compliance by the other party of or with any of the applicable provisions of this Agreement if done so in writing. No waiver of any provision hereof shall be construed as a waiver of any other provision or any subsequent waiver of the same provision.

23. **Further Cooperation.** Each party shall act in good faith towards the other and shall not engage in any acts to contravene or frustrate the purposes and intent of this Agreement. Each party will execute and/or deliver such other documents or instruments and/or take such further actions as may be reasonably requested by the other party from time to time to carry out the provisions and intent of this Agreement or any of the provisions hereof.

24. **Remedies Cumulative.** All of the rights and remedies of the parties set forth herein are cumulative and are in addition to (not exclusive of) any other rights or remedies otherwise afforded either party at law or equity.

*(Signature Page Follows)*

The parties hereto have caused this Agreement to be executed and delivered as of the first day and year written above.

"COMPANY"

FIRST CHOICE LABORATORY, LLC

By: _____
Name: _____
Title: _____

"CONTRACTOR"

_____
ENCORE HOLDINGS, LLC

## SCHEDULE 3

## DESCRIPTION OF SERVICES/SERVICE AREA

**LABORATORY/ALL SERVICE AREAS**

12

7847194_3/ PERSON.475

# SCHEDULE 4

## PER DIEM TRAVEL REIMBURSEMENT